UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| **SHELLY THOMAS** | * | JURY TRIAL DEMAND |
|  | * | CASE NO. 11-544 |
| **PLAINTIFF** | * |  |
| V. | * | SECTION F |
|  | * |  |
|  | * | JUDGE MARTIN L.C. FELDMAN |
|  | * |  |
|  | * | MAGISTRATE DANIEL KNOWLES |
| **ITT EDUCATIONAL SERVICES, INC.** |  |  |
| **DEFENDANT** | * |  |

## AMENDED COMPLAINT - JURY TRIAL DEMANDED

COMES NOW Shelly Thomas, filing and serving this her Amended Complaint, stating as follows, to wit:

1. **Plaintiff, Shelly Thomas (Thomas)**, is an adult resident citizen of Louisiana.

2. **Defendant, ITT Educational Services, Inc. (ITT),** is a publicly traded institution of higher learning whose corporate headquarters is located in Carmel, Indiana. ITT does business under the trade name, *inter alia*, ITT Technical Institute. ITT is licensed to do business, does business in the state of Louisiana and it did business where Plaintiff was employed and reported to work at while employed by Defendant. ITT is located within the jurisdiction of this court.

3. Jurisdiction is proper because one of Thomas's claims arises under 31 U.S.C. § 3730(h). Jurisdiction is also proper under 28 U.S.C. § 1332 because both parties are residents of different states, and the amount in controversy exceeds $75,000. Venue is proper in this district because the acts giving rise to this cause of action occurred in this district.

1

## FACTUAL BACKGROUND

4. Consumers finance the payment of tuition and other costs related to attending ITT's colleges through federally and state subsidized financial aid in the form of grants and loans. ITT must meet certain statutory, regulatory and contractual requirements in order to be considered an institution of higher learning eligible to benefit from federal and state subsidized financial aid.

5. Pursuant to 20 U.S.C. § 1001, ITT must be accredited by a nationally recognized accrediting agency to be eligible to benefit from federal and state subsidized financial aid. Pursuant to 20 U.S.C. § 1094(a)(21), ITT must meet all requirements of accreditation in order to be eligible for federal and state subsidized student aid. These requirements include the accurate reporting of ITT student grades and grade point averages (GPA).

6. Pursuant to 20 U.S.C. § 1099(j), ITT loses its ability to participate in, and benefit from, federal and state subsidized financial aid programs if it fails to abide by the terms of its accreditation. To maintain accreditation, ITT must accurately report its students' grade point averages to the accrediting agency.

7. Pursuant to 28 L.A.C. § 111, all certifications of student performance which are submitted to the Louisiana Student Financial Aid Commission (LASFAC) for the purpose of determining a student's eligibility for an award under a student aid program administered by LASFAC shall be by sworn affidavit of the certifying ITT official and such official shall be subject to criminal law imposed by Louisiana statute applicable to false swearing.

8. Pursuant to 28 L.A.C. § 805(a)(7), for an ITT student to maintain his eligibility for Tuition Opportunity Program for Students Tech Award (TOPS-TECH), a program administered by the LASFAC, the ITT student must maintain a 2.50 cumulative GPA by the end of each spring semester.

9. In 2001, Thomas was hired to serve as an ITT instructor at its St. Rose, Louisiana, campus in St. James Parish, Louisiana. While employed as an ITT instructor, Thomas taught courses involving Microsoft Office, Microsoft Project, Peachtree, Autocad, Accounting, development of group skills, technical writing, and economics.

10. In an ITT academic quarter that began in June 2010, and ended in September 2010, Thomas taught the following ITT courses: Strategies for Tech Professionals, Group Dynamics, and Portfolio Procedures. During this academic quarter, many of Thomas's ITT students failed to attend class, complete assignments or pass tests. Due to those students' performance, they earned low grades, including failures. Thomas advised the academic dean Kenya Crocken Waugh and associate dean Dr. Renee Hall (the deans), that she was going to assign many of her ITT students with low grades. The deans told Thomas to create inflated false grade records reflecting grades her students did not earn so those students could remain enrolled at ITT and eligible to receive from financial aid such as grants that are paid from the United States and Louisiana government fisc. At that time, the deans told Thomas that her inflated false grade records for her ITT students would be used to get those governments to continue paying financial aid subsidies on behalf of her students to pay ITT's fee and tuition bills.

11. The deans knew that using these false grade records to get false claims for government subsidized financial aid paid or approved, or presenting the grade records to the accrediting agency to maintain accreditation was a fraud on the United States government fisc. The deans knew that they were asking Thomas to participate in ITT's fraudulent scheme to obtain government subsidized financial aid through fraud by demanding she create inflated and false grade records for her ITT students. ITT and Thomas knew that by creating and using these inflated false grade records, the United States and Louisiana government would be defrauded into paying financial subsidies to ITT that it was not entitled to receive.

3

12. To entice ITT professors, including Thomas, to make inflated false grade records for their ITT students, ITT paid its professors bonuses based upon the student retention rate of those professors' students. ITT paid the bonus to help convince the ITT professors to create inflated false grade records so every ITT student's GPA would remain high enough to continue receiving government subsidized financial aid, and so ITT could maintain its accreditation.

13. After Thomas was instructed to create the inflated false grade records, Thomas contacted the Accrediting Counsel of Independent Colleges and Schools (ACICS), the accrediting agency for ITT, to report that her employer demanded she create inflated false grade records that inaccurately reflect her students' GPA, and inquired whether this conduct was compliant with ACICS accreditation guidelines. ACICS told Thomas that such conduct was in violation of the accreditation guidelines and would cause ineligible students and the college using the false grade records to fraudulently obtain financial aid from the United States and Louisiana government fisc.

14. At all relevant times, the deans knew ACICS accreditation guidelines require the accurate reporting of student grades, and by causing ITT professors to make inflated false grade records for presentment with reports to ACICS, the claims presented by ITT and its students for government subsidized financial aid would be fraudulent.

15. Ms. Thomas refused to create inflated false grade records in order to stop ITT from: (1) presenting false claims for payment of government financial aid subsidies, (2) using false records material to false claims for government financial aid subsidies, and (3) defrauding the United States and Louisiana government fisc. The Deans and ITT knew Thomas refused to create false grade records to stop ITT from defrauding the Louisiana and United States government fisc because the Deans and Thomas discussed the minimum GPA requirements an ITT student, and ITT, must maintain to remain eligible for government subsidized financial aid.

16. On September 8, 2010, dean Kenya Crochen Waugh contacted Thomas by telephone, with full knowledge that Thomas was engaging in protected activity by refusing to create inflated false grade records for her ITT students to stop ITT from defrauding the United States and Louisiana government fisc, and terminated Thomas's employment because Thomas engaged in this protected activity.

17. After ITT terminated Thomas for engaging in the protected activity, Thomas learned ITT continued with its scheme to defraud the United States and Louisiana government fisc by illegally creating inflated false grade records for Thomas's ITT students to ensure those students and ITT remained eligible to receive the government subsidized financial aid.  ITT then presented these false grade records to ACICS to retain its accreditation and to continue receiving money from the United States and Louisiana government fisc in the form of subsidized financial aid for which ITT and those ITT were ineligible.

## COUNT ONE

18.  Thomas hereby incorporates all allegations set forth above into this Count One as if set forth at length herein.

19.  The False Claims Act prohibits ITT from knowingly causing false claims to be presented for payment or approval.  31 U.S.C. 3729(a)(1)(A).  ITT caused false claims for federally subsidized to be presented to the United States for payment and approval in reliance on the inflated false grade records created by ITT for students in Thomas's ITT courses.  These subsidy claims were false and fraudulent because the students and ITT would not have received those subsidies without ITT's false student GPA representations in the inflated false grade records ITT presented to ACICS.  Thus, the claims ITT caused to be presented for federal financial aid subsidies arising from the inflated false grade records were false and fraudulent.

20.  Further, the False Claims Act prohibits ITT from knowingly causing false records or statements material to false or fraudulent claims.  31 U.S.C. 3729(a)(1)(B).  ITT made and used inflated false grade records of Thomas's ITT students, and presented those false grade records to ACICS in order for ITT to maintain accreditation, and for ITT and the students benefitting from the inflated false grade records to receive payment of subsidies from the United States government.  These inflated false grade records were material to false and fraudulent claims for financial aid subsidies because they caused ACICS to keep ITT accredited and to falsely report students who took Thomas's classes to have the minimum GPA required for federal financial aid eligibility.  These claims for payment of federal financial aid subsidies were false and fraudulent because ITT, and the students who took Thomas's classes, were ineligible to benefit from those subsidies.  The U.S. would not have paid those subsidies had ITT used the accurate grade records created by Thomas instead of the inflated false grade records created by ITT after Thomas was terminated.

21.  ITT intended to violate 31 U.S.C. §§ 3729(a)(1)(A) and (B) when it demanded Thomas create inflated false grade records to keep: (1) the ITT St. Rose, Louisiana, campus accredited, and (2) the students who benefitted from the grade changes eligible for financial aid.  ITT knew all inflated false student grade records causing an ineligible ITT student to become eligible for financial aid subsidies were material to the United States' decision to pay to ITT federal financial aid subsidies on behalf of ITT students who would have been ineligible had the United States known the content of the grade reports created by each ITT student's professor.

22.  In reliance on inflated false grade records made and used by ITT, claims for federal financial aid subsidies were paid out of the United States government fisc to the St. Rose, Louisiana, ITT campus to pay tuition and fees charged to Thomas's students who benefited from the grade changes.  Ms. Thomas knew that ITT wanted and intended to use inflated false grade

records pertaining to her ITT student's grades to cause the government to pay false claims for federally subsidized financial aid.  Thomas also knew this conduct would be a fraud on the United States government fisc.  The deans, acting under the express authority of ITT, terminated Thomas's employment as an ITT instructor because of her protected activity in trying to stop ITT from violating the False Claims Act and defrauding the United States government fisc.

23.  Pursuant to 31 U.S.C. § 3730(h), Ms. Thomas is entitled to all the relief necessary to make her whole because ITT terminated her due to her protected activity of stopping ITT from violating the false claims act and defrauding the United States government fisc.  At all relevant times, the deans and ITT had full knowledge that Thomas refused to create inflated false grade records for her ITT students attending her classes to stop ITT's fraudulent conduct and false claims act violations.

24.  Because of ITT's conduct as alleged, Thomas is entitled to a Judgment against ITT reinstating her ITT employment with the same seniority status that she would have had but for her wrongful discharge (or the monetary equivalent thereof), two times her lost back pay, general damages arising from her emotional distress and metal anguish, compensation for all special damages she sustained as a result of ITT's alleged wrongful conduct, litigation costs, court costs, pre-judgment interest and reasonable attorneys' fees.

## COUNT TWO

25.  Thomas hereby incorporates all allegations set forth above into this Count as if set forth at length herein.

26. Pursuant to La. R.S. 23:967(A)(1)(2)(3), ITT is prohibited from terminating Thomas for reporting ITT's illegal violations of Louisiana state law by disclosing ITT's conduct of illegally fraudulent creating inflated false grade records for the ITT students attending her classes

so ITT could receive payment of state and federal government student financial aid subsidy payments.

27. ITT ordering Thomas to create inflated false grade records was in violation of state and federal law. ITT committed a clear violation of state and federal law when it terminated Thomas for objecting and refusing to participate in the illegal grade changing scheme urged by the deans of ITT – by refusing to create false grade records for the students who attended her ITT classes - when Thomas knew the deans would use the false records containing the unearned grades to defraud the Louisiana and United States fisc.

28. After Thomas was terminated, ITT created inflated false grade records for many students taught by Thomas at ITT. Initially, as her professor job required, Thomas reported accurate grade records in the ITT portal pertaining to each of her students, marking failure for some of her ITT students. After her termination, however, ITT created inflated false grade records for Thomas's ITT students. When ITT certified these inflated, false and altered grade records were accurate, and used them maintain ITT's and its students' eligibility for federal and state subsidized financial aid, state and federal laws were violated.

29. Plaintiff objected and refused to participate in this fraud and to violate state and federal law. As a result, ITT terminated Thomas on or about September 8, 2010. Thomas was told by the deans that she had "involuntarily resigned", as a pre-text for its illicit reasons for terminating Thomas as alleged herein. Thereafter, and on or about October 18, 2010, ITT contended ITT terminated Thomas for failing to attend an in-service training session on September 4, 2010.

30. Pursuant to La. R.S. 23:967(B), Ms. Thomas is entitled to a Judgment against ITT for her compensatory damages, back pay, benefits, job reinstatement, attorney's fees, pre-judgment interest, and all costs of litigation because of its misconduct in firing her for refusing to

participate in the grade changing scheme, falsification of student grade records, false claims act violations, and false swearing the deans required of her to continue to be employed by ITT.

31. Plaintiff itemizes her damages as follows:

    a. Past and future mental anguish and emotional distress;

    b. Past and future medical expenses;

    c. Double her past and future loss of wages;

    d. Attorneys fees, litigation costs and court costs under federal law 31 U.S.C. § 3730(h);

    e. Compensatory damages and attorney fees under state law La. R.S. 23:967C(2).

    f. A preliminary and permanent injunction is issued barring ITT from continuously engaging in the conduct alleged in the Complaint.

    g. Damages to professional reputation and loss of chosen profession.

    h. Such other relief as the Court deems necessary and proper to make her whole.

32. Petitioner prays for trial by jury on all issues.

**WHEREFORE**, Plaintiff hereby requests this Court enter a Judgment commanding ITT to pay Ms. Thomas all the damages and other monetary relief sought in this Amended Complaint.

Date: June 10, 2011                        Respectfully submitted,

*s/ Glenn C. McGovern*
Glenn C. McGovern, Attorney (La. Bar # 9321)
Attorney for Plaintiff Shelly Thomas
Mailing address
P.O. Box 516
Metairie, La. 70004
Suite 101, 2637 Edenborn Ave.
Metairie, La. 70002
Ph. 504-456-3610
Fax 504-456-3611
Email: gcmcg@mac.com

## CERTIFICATE OF SERVICE

      I hereby certify a copy of the foregoing Amended Complaint of Shelley Thomas has been forwarded to defendant's counsel, Mark N. Mallery, T.A., Ogletree Deakins Nash Smoak & Stewart, P.C., 639 Loyola Avenue, Suite 2550, New Orleans, Louisiana 70113 via facsimile, CM/ECF electronic filing, and via U.S. First Class Mail, Certified Mail, Return Receipt Requested, properly addressed, postage prepaid on this 10th day of June, 2011.

                                                   *s/Glenn C. McGovern*
                                                   Glenn C. McGovern, Attorney for Shelley Thomas