### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**SHELLEY THOMAS**                                   **CIVIL ACTION**

**VERSUS**                                                    **CASE NO. 11-0544**

**ITT EDUCATIONAL SERVICES, INC.**             **SECTION: "G"(3)**

### ORDER AND REASONS

Currently before the Court is a Motion for Summary Judgment filed by Defendant ITT

Educational Services, Inc. ("ITT") wherein ITT requests that this Court dismiss Plaintiff Shelley

Thomas's ("Thomas") lawsuit in its entirety, with prejudice, at Thomas's cost.[1]  After considering

the motion, opposition, reply, surreply, record, and applicable law, the Court will grant ITT's

Motion for Summary Judgment, each party to bear its own costs.

### I.  Background

***A.  Procedural Background***

On March 9, 2011, Thomas filed her initial complaint against ITT, alleging that ITT fired

her in retaliation for her refusal to falsify student grade records.[2] The case was initially assigned to

Section "F" of this court, Judge Martin L. C. Feldman.[3] Thomas's complaint alleged a federal

retaliation claim pursuant to 31 U.S.C. § 3730(h) and Louisiana state law retaliation claims under

---

[1] Rec. Doc. 86.

[2] Rec. Doc. 1.

[3] Rec. Doc. 2.

La. R.S. § 23:967(A).[4]  On April 29, 2011, ITT moved to dismiss Thomas's federal retaliation claim for failure to state a claim.[5]  On June 9, 2011, Judge Feldman granted ITT's motion and dismissed Thomas's federal retaliation claim, holding that Thomas failed to allege that she engaged in protected activity, that Thomas failed to allege that ITT had knowledge of her purportedly protected activity, and that Thomas's allegation that ITT terminated her employment as an ITT instructor because of her actions in attempting to stop ITT from violating the False Claims Act "is also unsupported by her papers."[6]

On June 15, 2011, Thomas sought leave to file an amended complaint,[7] and on July 13, 2011, Magistrate Judge Knowles granted Thomas leave to file an amended complaint,[8] which she filed that same day.[9]  In Thomas's amended complaint, Thomas alleges that the Dean of Academic Affairs, Kenya Crocken Waugh ("Crocken Waugh"), and the Associate Dean of General Studies,  Reneé Hall ("Hall"), told her to "create inflated false grade records reflecting grades her students did not earn so those students could remain enrolled at ITT and eligible to receive from financial aid such as [sic] grants that are paid from the United States and Louisiana government[s]."[10]  Further, Thomas alleged that after she was instructed to create the "inflated false grades," she contacted the Accrediting Counsel of Independent Colleges and Schools ("ACICS"), the accrediting agency for

---

[4] Rec. Doc. 1. at ¶¶ 11-20.

[5] Rec. Doc. 9.

[6] Rec. Doc. 17 at pp. 8-10.

[7] Rec. Doc. 20.

[8] Rec. Doc. 32.

[9] Rec. Doc. 33.

[10] *Id.* at ¶ 10.

ITT, "to report that her employer demanded she create inflated false grade records that inaccurately reflect[ed] her students' GPA[s] . . . ."[11]  Thomas alleged that she "inquired whether this conduct [that is, the creation of inflated student grade reports] was compliant with ACICS accreditation guidelines."[12]

On July 25, 2011, ITT moved to dismiss Thomas's federal retaliation claim brought under the False Claims Act and Thomas's state retaliation claims brought under La. R.S. §§ 23:967(A)(1) and (A)(2).[13]  On August 10, 2011, Judge Feldman denied ITT's motion with respect to Thomas's federal retaliation claim, holding that "[w]hile the pleadings are lackluster, it cannot be said that the claim does not have facial plausibility."[14]  Concerning Thomas's state law retaliation claims brought under La. R.S. § 23:967(A), Judge Feldman dismissed Thomas's claims insofar as they alleged a violation of La. R.S. § 23:967(A)(1), finding that that portion of the statute only concerns retaliation for exposing "violations of state law" and that Thomas alleged that she was retaliated against for exposing violations of federal law.[15]  Judge Feldman denied ITT's motion to dismiss Thomas's claim brought under La. R.S. § 23:967(A)(2), finding that Thomas provided sufficient information in her pleadings for the Court to infer that she was retaliated against for "providing information to or testifying before any public body conducting an investigation, hearing or inquiry into any

---

[11]  *Id.* at ¶ 13.

[12]  *Id.*

[13]  Rec. Doc. 34.

[14]  Rec. Doc. 40 at p. 9 (internal citations omitted).

[15]  *Id.* at p. 10.

violation of law."[16]  ITT filed its answer to the amended complaint on August 24, 2011,[17] and on October 7, 2011, Judge Feldman transferred the case to this Section, Section "G" of the Eastern District of Louisiana.[18]

On April 24, 2012, ITT filed the motion for summary judgment currently pending before this Court.[19]  In this motion, ITT argues that Thomas cannot produce evidence to support the necessary elements of her federal retaliation claim and state law claims.  Thomas filed her opposition to the motion on May 1, 2012.[20]  Following leave of court, ITT filed a reply on May 11, 2012[21] and Thomas filed a surreply on May 18, 2012.[22]

## B.  Summary of Material Facts

Thomas began working for ITT in 2001 as a part-time instructor at the St. Rose campus and was promoted to full-time instructor later that year[23]; she continued to work at ITT until early September of 2010.[24]  During her last academic quarter at ITT, Thomas reported directly to Hall, the

---

[16] *Id.* at p. 11 (citing La. R.S. § 23:967(A)(2)).

[17] Rec. Doc. 42.

[18] Rec. Doc. 45.

[19] Rec. Doc. 86.

[20] Rec. Doc. 89.

[21] Rec. Doc. 94.

[22] Rec. Doc. 104.

[23] Thomas Deposition, Part 1, Rec. Doc. 89-15 at pp. 17-18 (All citations to deposition testimony refer to the page numbers in the deposition transcripts).

[24] Thomas Deposition, Part 2, Rec. Doc. 89-16 at pp. 206-08.

Associate Dean of General Studies.[25]  During this quarter, Hall received complaints from some of Thomas's students stating that, among other things, Thomas would not accept makeup work or late assignments.[26]  According to Thomas's deposition testimony, she and Hall subsequently met in response to these student complaints.[27]

At the end of the quarter, on September 2, 2010, Hall presented Thomas with a corrective action form during a private meeting between the two.[28]  This form stated that Thomas talked down to her students, alienated her students, and would not allow students to turn in makeup work.[29]  Thomas testified in her deposition that she disputed the allegations in the corrective action form; she stated that she did not talk down to her students and that she accepted makeup work.[30]  Thomas further testified that Hall replied that the form was filled out before Thomas allowed her students to turn in makeup work.[31]  According to Thomas's deposition testimony, Thomas then left the meeting upset.[32]

The following day, on September 3, 2010, Thomas met with ITT Campus Director William

---

[25] Thomas Deposition, Part 1, Rec. Doc. 89-15 at pp. 25, 57.

[26] Thomas Deposition, Part 2, Rec. Doc. 89-16 at p. 257.  Most of the classes that Thomas taught were in the evening, beginning at 6:00 p.m., as many of her students were employed during the day and attended class at night.  Thomas Deposition, Part 1, Rec. Doc. 89-16 at pp. 37-38.

[27] Thomas Deposition, Part 2, Rec. Doc. 89-16 at p. 143.

[28] Id. at pp. 175-177.

[29] Corrective Action Form, Rec. Doc. 89-18.

[30] Thomas Deposition, Part 2, Rec. Doc. 89-16 at p. 179.

[31] Id. at p. 180.

[32] Id.

Wells ("Wells").[33]  Thomas testified in her deposition that the meeting was about the corrective

action form.[34]  During the meeting, Thomas attempted to demonstrate that she accepted makeup

work and disputed the other contents of the corrective action form.[35]  In disputing the corrective

action form with Wells, Thomas testified that she told Wells, "I've been with the school 9 and 1/2

years.  I've never had any problems like this.  I, you know, have [been] Teacher of the Year, Teacher

of the Quarter.  My deans always upheld me to other instructors as one to follow.  The school picked

me as one person out of the district to revamp a course.  I've always been an exemplar employee

doing more than what's required of me."[36]  Thomas further testified:

> And he said maybe I wasn't as good a teacher as I thought I was.  And he told
> me – I said, "Well I think I'm going to have" – I think I told him I was going to have
> to go to headquarters, or something, because I like to go through my chain of
> command.  And so he said headquarters was not going to entertain me because all
> they were worried about was my numbers, and my numbers did not prove I was
> successful.
>
> And he said that "No matter how good of a teacher you are, all headquarters
> is looking at are numbers."
>
> That's what he said.[37]

It is undisputed that on September 4, 2010, the day after her meeting with Wells and two

days after her meeting with Hall, Thomas was scheduled to attend an in-service training meeting.[38]

Both Wells's declaration and Thomas's deposition testimony demonstrate that Thomas did not

---

[33] *Id.* at p. 181.

[34] *Id.* at pp. 181-182.

[35] *Id.* at p. 182.

[36] *Id.* at pp. 189-190.

[37] *Id.* at p. 190.

[38] Declaration of Wells, Rec. Doc. 86-7 at ¶ 6.

attend this training.[39]  According to Wells and Thomas, Thomas also missed an in-service training

meeting on September 8, 2010.[40]  Thomas testified that during this time, she was out of town with

her sister[41] and that she had left a vacation slip on her desk but had not turned it in to any of her

superiors.[42]

According to both Hall and Thomas, from September 4 through September 8, 2010, Hall

made repeated attempts to contact Thomas, through email and telephone calls, regarding Thomas's

absences.[43]  Thomas further testified that on September 9, 2010, she received a voice message from

the Dean of Academic Affairs, Crocken Waugh, stating that ITT considered her to have resigned

from her employment due to these absences.[44]  Additionally, Thomas stated that she later received

mail from Wells confirming that she was no longer employed by ITT.[45]  Thomas contends that the

true reason she was terminated from ITT was because she refused to change student grades.[46]

Additionally, on October 11, 2010, after Thomas was terminated, Thomas sent ITT's

compliance manager, Aimee Eller ("Eller"), an email wherein Thomas disputed the contents of the

corrective action form that she had received.[47]  Thomas did not complain to Eller in her email that

---

[39] *Id.*; Thomas Deposition, Part 2, Rec. Doc. 89-16 at p. 205.

[40] Declaration of Wells, Rec. Doc. 86-7 at ¶ 6; Thomas Deposition, Part 2, Rec. Doc. 89-16 at p. 204.

[41] Thomas Deposition, Part 2, Rec. Doc. 89-16 at pp. 202, 208, 218-220.

[42] *Id.* at pp. 221-222.

[43] *Id.* at pp. 202-203, 208; Declaration of Hall, Rec. Doc. 86-6 at ¶ 6.

[44] Thomas Deposition, Part 2, Rec. Doc. 89-16 at pp 206-208.

[45] *Id.* at pp. 205-206.

[46] *Id.* at p. 258-260.  Crocken Waugh also testified that she believed Thomas suffered retaliation because she was outspoken about grades and attendance.  Crocken Waugh Deposition, Rec. Doc. 89-7 at p. 178.

[47] Thomas Email to Eller, Rec. Doc. 86-3 at pp. 255-256.

she thought ITT was engaged in fraudulent or illegal conduct by changing student grades; rather, she addressed the underlying facts contained within the corrective action form.[48]

Further, although Thomas's Amended Complaint implies that she contacted ACICS to report that ITT demanded that she create inflated false grade records prior to her termination,[49] Thomas's deposition testimony is clear that she did not contact ACICS until *after* she was terminated.[50] Specifically Thomas testified that she asked a woman at ACICS after she was terminated "what to do if [Thomas] knew of a situation where [a school] had changed final grades."  According to Thomas, the woman responded that Thomas would have to file a written complaint,[51] but Thomas never submitted a written complaint to ACICS.[52]

## II.  Law and Analysis

### A.  Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[53]  When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from

---

[48] *Id.*

[49] Rec. Doc. 33 at ¶ 13.

[50] Thomas Deposition, Part 2, Rec. Doc. 89-16 at pp. 213-216.

[51] *Id.* at p. 216.

[52] *Id.*

[53] Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

making credibility determinations or weighing the evidence."[54]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[55]

If the dispositive issue is one on which the moving party bears the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[56]  The nonmoving party can defeat the motion by either countering with sufficient evidence of its own, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[57]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[58]  Then the burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[59]  The nonmoving party may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[60]  Here, ITT has

---

[54] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[55] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[56] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

[57] *Id.* at 1265.

[58] *See Celotex*, 477 U.S. at 325.

[59] *See id.* at 324.

[60] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

moved for summary judgment alleging that Thomas cannot meet her burden to establish her claims; thus, Thomas, as the nonmoving party, must set out specific facts showing that a genuine issue exists by submitting evidence or specifically referring to evidence in the record.

## B.   Retaliation Under the False Claims Act

### 1.   Applicable Law

In this case, Thomas alleges retaliation under the False Claims Act, stating that she was retaliated against for her refusal to falsely inflate grades, which she claims would violate the False Claims Act because, according to Thomas, ITT reported inflated student grade point averages in order to receive federal and state funding.  The False Claims Act "prohibits making fraudulent claims for payments to the United States" and "creates a cause of action for any person retaliated against by his employer for attempting to prevent a [False Claims Act] violation."[61]  To establish a claim under Section 3730(h), a plaintiff must show (1) that she engaged in protected activity; (2) that her employer knew she engaged in protected activity; and (3) that she was discharged because she engaged in the protected activity.[62]

In order for actions to be protected under the False Claims Act, they must be motivated by a concern regarding fraud against the government.[63]  Prior to a 2009 amendment, Section 3730(h) barred retaliation because of "lawful acts done by the employee on behalf of the employee . . . in

---

[61] *Riddle v. Dynocorp Int'l Inc.*, 666 F.3d 940, 941 (5th Cir. 2012) (citing 31 U.S.C. § 3729(a) and 31 U.S.C. § 3730(h)).

[62] *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994).

[63] *Id.*

10

furtherance of an action under this section."[64]  However, according to the Fifth Circuit, "Congress amended [Section 3730(h)] in 2009 to provide relief to any employee discharged for acting 'in furtherance of other efforts to stop 1 or more violations of this subchapter.'"[65]  Therefore, under the amended statute, an employee is entitled to relief if he has been discharged for acting in furtherance of other efforts to stop one or more violations of the False Claims Act, regardless of whether the employee was acting in furtherance of a civil action under the False Claims Act.

The Fifth Circuit has not yet issued a published opinion interpreting the language added by this amendment.  However, the Fifth Circuit has indicated that the amendment has done nothing to alter the requirement that, in order to be actionable, any acts done in furtherance of efforts to stop violations of the False Claims Act must be motivated by concerns about government fraud.[66]

The second element of a False Claims Act retaliation claim requires that the employee must make the employer aware that the employee is concerned about possible fraud, thus demonstrating that the employer knew that the employee was engaged in protected activity.[67]  Absent such knowledge on the part of the employer, a plaintiff also cannot establish the third element of a False Claims Act retaliation claim, that the employee was discharged because she engaged in the protected activity, because the employer "[cannot] possess the retaliatory intent necessary to establish a

---

[64] 31 U.S.C. § 3730(h) (West 2003).

[65] *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 Fed. Appx. 366, 372 n. 5 (5th Cir. 2011) (quoting Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624-25 (2009)).

[66] *See Riddle*, 666 F.3d at 941-42.  The Court in *Riddle* was presented with a question regarding the applicable statute of limitations and was not asked to review whether the plaintiff had stated a claim under the False Claims Act.  Nonetheless, the Court cited the amended version of Section 3730(h) and explained that "the FCA creates a cause of action for any person retaliated against by his employer *for attempting to prevent an FCA violation.*" (emphasis added).  *Id.*  This requirement, that the acts must be motivated by concerns of fraud and the concerns expressed to the employer, was initially set forth in *Robertson*, an opinion published prior to the amendment.  32 F.3d at 951.

[67] *Robertson*, 32 F.3d at 952.

violation of the whistleblower provision of the False Claims Act."[68]

2.      *Parties' Argument*

ITT argues that Thomas did not engage in protected activity because her actions were not motivated by concern about fraud against the government, a requirement for her actions to be protected, nor was her employer aware of any alleged concern on her part about possible fraud by ITT. ITT points to Thomas's deposition and states that when asked in detail about her complaints to her academic supervisor, Thomas did not testify that she told her supervisors or anyone else at ITT that ITT was making fraudulent or false claims to the government for payment.[69]  ITT directs the Court to a portion of Thomas's deposition testimony where Thomas described ITT's activity as unethical, rather than illegal:

> Q.      Before you received the voice mail message from Kenya Crocken Waugh on September 9 of 2010, did you tell Kenya Crocken Waugh that you thought ITT Tech was doing something illegal?
>
> A.      I told both her and Renné.  They want me to accept these grades and pass these students, and I told them I wasn't doing it.  **It wasn't ethical**.  I've never done it.  I wasn't doing it then, and I'm not doing it now.
>
>                       * * *
>
> A.      And I told them, you know, I'm not taking Eduardo's stuff, don't – you know, they wanted me to take it and just pass him.  And I wasn't doing it. I said I'll look at the documents, what he turns in, and if he's, you know, going to pass or whatever, I will pass him.  But if it's not, I'm not going to pass him.[70]

---

[68] *Id.*

[69] Thomas Deposition, Part 2, Rec. Doc. 89-16 at pp. 208-218.

[70] *Id.* at pp. 209-210 (emphasis added).

Therefore, ITT contends that Thomas never demonstrated concern about false or fraudulent claims for payment submitted to the government by ITT; instead, ITT alleges, Thomas merely expressed her belief that it was unethical to pass a student whose work was not acceptable.

Further, ITT contends that the complaints Thomas made to her superiors in the time period preceding her termination concerned the corrective action form that she received and do not demonstrate that she was concerned with fraud perpetuated by ITT upon the government. Specifically, ITT refers to Thomas's deposition testimony, which states that when Thomas met with Hall on September 2, 2010, she disputed the truthfulness of the corrective action notice, became upset, and then left Hall's office.[71]   ITT argues that Thomas's deposition testimony regarding her meeting with Wells on September 3, 2010 fails to indicate that she was concerned about any fraudulent activity on the part of ITT involving false claims to the government for the payment of funds, much less that she informed her employer of any such concerns.   Thomas testified that she told Wells:

> I've been with the school 9 and 1/2 years.  I've never had any problems like this.  I, you know, have [been] Teacher of the Year, Teacher of the Quarter.  My deans always upheld me to other instructors to follow.  The school picked me as one person out of the district to revamp a course.  I've always been an exemplar employee doing more than what was required of me.[72]

ITT further argues that even Thomas's post-termination complaints to Eller, ITT's compliance manager, although having no bearing on whether Thomas was terminated for engaging in protected activity, demonstrate that she was neither concerned about fraud nor indicated any such concerns to her employer.  In these complaints, Thomas expressed her concern about the statements

---

[71] *Id.* at pp. 178-181.

[72] *Id.* at pp. 189-190.

in the corrective action form regarding her actions and the descriptions of her work performance and character.  As ITT notes, even at that time, Thomas never mentioned any concern about fraudulent actions by ITT against the government.[73]

ITT also addresses Thomas's allegation set forth in her amended complaint that Thomas complained to ITT's accrediting authority, ACICS, about the allegedly fraudulent conduct by ITT and that Thomas was told by ACICS "that such conduct was in violation of the accreditation guidelines and would cause ineligible students and the college using false grades to fraudulently obtain financial aid from the United States and Louisiana government[s]."[74]  ITT notes that during Thomas's deposition, she stated that she did not contact ACICS until *after* her employment was terminated.[75] Therefore, ITT contends that this conversation cannot support a claim of retaliation under the False Claims Act because the conversation occurred after Thomas was terminated.

Additionally, ITT argues that Thomas's concerns about accepting makeup work are not concerns about fraud.  ITT argues that these concerns and complaints address issues of academic freedom.  By analogy, ITT argues that Thomas's claim is akin to a retaliation claim that was dismissed on a motion for summary judgment in *United States ex rel. Gray v. Lockheed Martin Corp*.[76]  There, the plaintiff complained that his employer was not performing work in accordance with its government contract, that the employer was engaged in falacious testing, and that the employer was reporting false data to the government.[77]  The court dismissed plaintiff's retaliation

---

[73] *Id.* at 217-218.

[74] Rec. Doc. 33 at p. 4.

[75] Thomas Deposition, Part 2, Rec. Doc. 89-16 at pp. 212-13.

[76] No. 05-4201, 2010 WL 672017 (E.D. La. Feb 19, 2010) (Lemelle, J.).

[77] *Id.* at *1-*4.

claim, finding that the plaintiff did not engage in protected activity and that even if he did, plaintiff's employer did not know that the plaintiff engaged in protected activity.[78]  Specifically, the court held that plaintiff's actions were not in furtherance of exposing fraud and that his actions merely involved a scientific dispute concerning optimal testing protocol.[79]  ITT contends that Thomas's internal dispute with others at ITT about whether to accept makeup work and whether to change students' grades, like the complaints in *Gray*, did not put ITT on notice of alleged fraud or false claims made to the government for payment, but rather involved matters of academic freedom.

ITT also relies on the Fifth Circuit's opinion in *Robertson* to demonstrate that Thomas's conduct does not constitute protected activity, does not show that ITT knew that Thomas engaged in protected activity, and does not demonstrate that ITT terminated Thomas because of her purported protected activity.  In *Robertson,* the court found that the plaintiff's complaints to his employer did not amount to protected activity because he "never used the terms 'illegal,' 'unlawful,' or 'qui tam action' in characterizing his concerns."[80]  The court also found that the defendant had no knowledge of the plaintiff's purported protected activity and, likewise, that the plaintiff had not shown that the defendant terminated the plaintiff because of any purported protected activity.[81]  ITT states that the evidence shows that none of Thomas's internal complaints ever used such words as referenced by the Fifth Circuit in *Robertson*.[82]  Thus, ITT argues that Thomas cannot show that she engaged in protected activity, that ITT knew she engaged in protected activity, and that ITT acted with the

---

[78] *Id.* at *3-*4.

[79] *Id.*

[80] *Robertson*, 32 F.3d at 951.

[81] *Id.* at 952.

[82] Rec. Doc. 86-1 at p. 9.

retaliatory motive required by *Robertson*.

In her opposition, Thomas attempts to distinguish *Robertson* and its requirement that an individual inform her employer that she is concerned about fraud by using terms such as "illegal," "unlawful," or "qui tam" in order for those complaints to constitute protected activity.  Thomas argues that the plaintiff's job duties in *Robertson*, as a senior contract administrator, required him to ensure that the government was billed properly, implying that it would be easy to mistake the purpose of his complaints.  However, because Thomas's job did not concern whether the government was billed properly, Thomas contends that *Robertson* does not require that she used terms such as "illegal," "unlawful," or "qui tam" in order for her complaints to constitute protected activity.  Further, Thomas argues that she did not need to have specific awareness of 31 U.S.C. § 3729, that is, that making false claims to the government for payment is a violation of the False Claims Act, when she refused to make false student grade records in order for those efforts to be protected activity.[83]

Additionally, Thomas argues that her protected conduct was not her comments to her employer about her alleged refusal to change grades but rather her alleged refusal to pass students who failed to turn in the majority of their assignments and who had poor attendance.  Thomas argues that this alleged refusal constitutes protected conduct because it was allegedly designed (1) to stop ITT from causing students to present false claims for loans to which the students were not entitled; (2) to stop ITT from submitting false grades to ensure ITT's continued accreditation; and (3) to stop ITT from concealing students' true grades so that ITT would retain tuition and fees from grants and

---

[83] Rec. Doc. 89 at p. 12 (citing *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab. 2*, 275 F.3d 838, 845 (9th Cir. 2002).

loans paid to students on the basis of the false grades.[84]   Thomas specifically contends that her refusal to falsify grade records constitutes protected activity because her refusal to give passing grades stopped ITT from violating the False Claims Act.[85]   Thomas further argues that the second and third elements of a False Claims Act retaliation claim are satisfied because, she argues, ITT knew that she refused to change grades and terminated her for this refusal.

3.      Analysis

The Court finds that, even taking the facts in the light most favorable to Thomas, Thomas cannot establish a material issue of fact as to any of the elements of a retaliation claim under the False Claims Act.  As the plaintiff, Thomas has the burden of showing that she engaged in protected activity, that her employer knew she engaged in protected activity, and that she was discharged because she engaged in the protected activity.[86]   Although Thomas argues that her refusal to falsify grade records was protected activity because she refused to do so to prevent ITT from making false claims to the government, Thomas has not provided any evidence, other than her own unsupported, conclusory allegations to support this contention.[87]   Likewise, Thomas has presented no evidence that her employer knew she engaged in protected activity or that she was discharged because she

---

[84] Rec. Doc. 89 at p. 12.

[85] *Id.* at p. 14.

[86] *Robertson*, 32 F.3d at 951.

[87] For instance, Thomas cites the deposition testimony of Penny White for the proposition that "Wells was aware that Thomas was reporting illegal activities and terminated her for that reason"  Rec. Doc. 89 at p. 5 (citing Rec. Doc. 89-9 at pp. 71-77, 91).  However, a review of the cited portion of White's deposition testimony does not support such a conclusion.  Moreover, Thomas cites portions of Wells's deposition testimony to show that he received ITT Ethics Hotline complaints from people he believed to be Thomas and others.  Rec. Doc. 89 at p. 5 (citing Rec. Doc. 89-14 at pp. 105, 107-08).  However, this testimony does not indicate whether these complaints were lodged prior to Thomas's termination and what the substance of the complaints were.  Thomas has provided no evidence that she, in fact, contacted the ITT Ethics Hotline prior to her termination.

engaged in the protected activity.[88]

Regarding Thomas's contention that she did not need to have specific awareness of 31 U.S.C. § 3729 when she refused to make false student grade records in order for those efforts to constitute protected activity, this Court agrees with the analysis applied by Judge Feldman when he previously rejected this argument.  He explained:

> [Thomas's] reliance on *Moore* is misleading because she incompletely invokes only the passage that favors her position: While the Ninth Circuit in *Moore* indeed determined that the FCA retaliation provision did not require "specific awareness" of Section 3729, it nonetheless required that the plaintiff be "investigating matters which are calculated, or reasonably could lead, to a viable FCA action."[89]

Similarly, Thomas's reliance on *Fanslow v. Chicago Manufacturing Center, Incorporated*[90] is also misplaced.  There, the court, relying on *Moore*, held that "the relevant inquiry to determine whether an employee's actions are protected under § 3730(h) is whether: (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government."[91]  Thus, while a plaintiff may not need to have specific awareness of the nuances of the False Claims Act, the plaintiff's conduct must be motivated by concerns of fraud against the government.

Thomas further contends that the *Robertson* requirement, that she must have informed her employer that she was concerned about "fraud" or "illegal conduct" or that she must have been pursuing a qui tam suit, does not apply here but rather that her action in refusing to change false

---

[88] Thomas relies on *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989), for the proposition that if she presents evidence that her refusal to falsify student records played a motivating role in ITT's decision to terminate her, then ITT can only avoid liability by proving by a preponderance of the evidence that ITT would have made the same decision even if it had not taken her refusal into account.  Rec. Doc. 89 at p. 13.  Thomas's argument ignores the fact that *Price Waterhouse* was a gender discrimination case under Title VII and misconstrues what constitutes "protected activity" under the False Claims Act.

[89] Rec. Doc. 17 at p. 10 (quoting *Moore*, 275 F.3d at 845).

[90] 384 F.3d 469, 479 (7th Cir. 2004)

[91] *Id.* at 480 (internal quotations omitted).

grades was sufficient to satisfy the protected conduct requirement.  She contends that the *Robertson* mandate applies only to employees whose job activities involve ensuring that the government is billed properly.  The Court is not persuaded by this argument, as a plain reading of *Robertson* does not indicate that its holding is so limited.  Further, Thomas cites no authority for such interpretation, and this Court finds no authority supporting such a proposition and, in fact, finds authority to the contrary.[92]

For internal complaints to constitute protected activity under the False Claims Act, the complaints must concern false or fraudulent claims for payment submitted to the government.[93] Thomas's refusal to accept late work or change grades without any suggestion that she was attempting to expose illegality or fraud within the meaning of the False Claims Act does not rise to the level of protected activity.[94]  Therefore, even if Thomas is right in her contention that she was terminated for refusing to change grades, her retaliation claim fails because she has presented no evidence to show that this refusal was motivated by a concern regarding fraud or that she was investigating fraud against the government as required to show that the refusal constituted protected activity.

---

[92] In *Patton*, an unpublished Fifth Circuit case, the court upheld the district court's grant of summary judgment in favor of the defendant on plaintiff's False Claims Act retaliation claim.  418 Fed. Appx. at 366.  There, although the plaintiff was employed as a carpenter and there was no indication that his job duties involved ensuring that the government was billed properly,  the court relied on *Robertson* and held that the plaintiff did not engage in protected activity.  Specifically, the Court stated, "although [plaintiff] alleges that he internally reported 'fraud,' it is clear that the substance of his complaints concerned [defendant's] allegedly unsafe or improper construction methods, and not that [plaintiff] was concerned with [defendant] defrauding the government."  *Id*. at 72.  The court explained that in order to constitute protected activity, "the complaints must concern false or fraudulent claims for payment submitted to the government."  *Id*.  The court further stated, "Mere criticism of [defendant's] construction methods, without any suggestion that [plaintiff] was attempting to expose illegality or fraud within the meaning of the FCA does not rise to the level of protected activity."  *Id*. (citing *Robertson*, 32 F.3d at 952).

[93] See *Robertson*, 32 F. 3d at 952 (finding no protected activity where employee "never characterized his concerns as involving illegal, unlawful, or false claims investigation.").

[94] See *United States, ex rel., Owens v. First Kuwaiti Gen. Trading & Contacting Co*., 612 F. 3d 724, 736 (4th Cir. 2010).

Likewise, Thomas's refusal to accept late work or change grades does not demonstrate that she put ITT on notice that she was concerned about or was investigating fraud against the government. Without knowledge that Thomas was investigating fraud or was concerned about fraud or illegal activities, ITT could not posses the retaliatory intent necessary to establish a violation of § 3730(h).[95]   Therefore, Thomas has not provided evidence that she engaged in protected activity, that her employer knew she engaged in protected activity, or that she was discharged because she engaged in the protected activity.   Accordingly, Thomas's claim of retaliation under the False Claims Act must be dismissed.

### C.  State Law Retaliation Claims

ITT has also moved for summary judgment on Thomas's Louisiana state law retaliation claims brought under La. R.S. §§ 23:967(A)(2) and (A)(3).[96]   La. R.S. §§ 23:967(A)(2) and (A)(3) provide:

>    A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
>       * * *
>
>    (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
>    (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

A plain reading of the statute demonstrates that in order to recover, a plaintiff must have *first*

---

[95] *Robertson*, 32 F. 3d at 952.

[96] Judge Feldman previously dismissed Thomas's claim arising under La. R.S. 23:967(A)(1).  Rec. Doc. 40.

"advis[ed] the employer of the violation of the law."[97]   The jurisprudence interpreting Section 23:967(A) supports such a reading.[98]

ITT argues that it is entitled to summary judgment on these claims because, among other reasons, Thomas cannot maintain a claim under Section 23:067(A) because she never informed her supervisors that ITT was engaged in illegal conduct.  In support, ITT again relies on Thomas's deposition testimony wherein she stated that she told Hall and Crocken Waugh that ITT's conduct was unethical but did not claim to have told them that the conduct was fraudulent or illegal.[99]

In opposition, Thomas refers the Court to the Fifth Circuit's decision in *Schroeder v. Greater New Orleans Federal Credit Union*,[100] where the court reversed a district court's grant of summary judgment in favor of the defendant for a claim brought under the Louisiana Whistleblower statute. Thomas argues that, in *Schroeder*, the Fifth Circuit did not state that the plaintiff was required to have told his employer that federal or state law was being violated.  However, Thomas's reliance on *Schroeder* is misplaced.  The *Schroeder* court did not have the need to address whether a plaintiff was required to complain to her employer about illegal conduct prior to termination because, there, the plaintiff alleged that, prior to the purported retaliation, she told her employer that she believed

---

[97] *Id.*

[98] *Fondren v. Greater New Orleans Expressway Comm'n*, 871 So. 2d 688, 691 (La. Ct. App. 5 Cir. 2004) ("As a condition precedent to protection under the statute, the employee must first advise the employer of the violation of law . . . .").  *See also Myers v. BP America, Inc.*, No. 08-0168, 2010 WL 3878920, at *4 (W.D. La. Sept. 28, 2010) (holding that to establish a claim under Section 23:967(A), the employee must have advised his employer of a violation of law prior to termination) (quoting *Hale v. Touro Infirmary*, 886 So.2d 1210, 1216 (La. Ct. App. 4 2004)); *Ganheart v. Xavier Univ. of La.*, No. 07-9703, 2009 WL 24227, at *9 (same) (E.D. La. Jan. 2, 2009) (Knowles, M.J.).

[99] Thomas Deposition, Part 2, Rec. Doc. 89-16 at p. 209.

[100] 664 F.3d 1016.

21

it was engaged in fraud in its lending practices.[101]  Specifically, the plaintiff alleged that she told

both the defendant's CEO and a member of the defendant's board of directors that she thought the

defendant was engaged in fraud in its lending practices.[102]  Thus, in *Schreoder*, the plaintiff clearly

informed her employer about the alleged violations of law prior to her termination, and the court's

silence as to this requirement does not indicate that such a requirement does not exist.

Additionally, Thomas argues that she was not required to provide any notice of a perceived

violation of law prior to her termination because all parties, including Wells, knew that changing

grades was illegal.  As already noted, the jurisprudence interpreting Section 23:967(A) makes clear

that advising the employer of a perceived violation of law prior to termination is a condition

precedent to recovery under this statute.  Therefore, even assuming that the parties knew that such

conduct would constitute unlawful activity, Thomas still must demonstrate that she informed ITT

that she believed it was engaged in unlawful conduct, and she has not met her burden to do so.  In

this case, Thomas has put forth no evidence to show that she ever informed ITT that she believed

its actions violated the law.  Again, the evidence presented here demonstrates that Thomas's

complaints prior to her termination concerned the corrective action form that she received from Hall

and that she believed changing grades "wasn't ethical."[103]  Thomas has never testified, nor has she

put forth any other evidence, that, prior to her termination, she told anyone at ITT that ITT was

engaged in illegal or fraudulent conduct.  Because an employee must inform her employer of illegal

activity as a condition precedent to bringing a claim under Section 23:967, ITT is entitled to

---

[101] *Id*. at 1018.

[102] *Id*.

[103] Thomas Deposition, Part 2, Rec. Doc. 89-16 at pp. 209-10.

summary judgment dismissing Thomas's state law claims.

### III.  Conclusion

ITT has moved for summary judgment dismissing with prejudice Thomas's claim for retaliation under the False Claims Act and Thomas's state law claims for retaliation.  Regarding Thomas's federal claim, Thomas has produced no evidence to show that (1) she was engaged in protected activity; (2) that ITT knew she was engaged in protected activity; and (3) that she was discharged because she engaged in protected activity; as such, her claim must be dismissed. Likewise, Thomas has provided no evidence that she informed ITT that she believed ITT to be engaged in illegal conduct, a condition precedent to her state law claims.

Accordingly,

**IT IS ORDERED** that ITT's Motion for Summary Judgment[104] is **GRANTED** and that this case is **DISMISSED WITH PREJUDICE**, each party to bear its own costs.

**NEW ORLEANS, LOUISIANA**, this _31st_ day of May, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[104] Rec. Doc. 86.